UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JAMES JOYCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:08 CV-01390-CEJ |
| v. ) | |
| ) | |
| ARMSTRONG TEASDALE, LLP ) | |
| ) | |
| Defendant. ) | |

## ANSWER OF DEFENDANT ARMSTRONG TEASDALE, LLP

Defendant Armstrong Teasdale, LLP ("Armstrong") responds to plaintiff's Complaint as follows:

### Count I

1. James Joyce is a citizen of the State of Arkansas and currently resides in Little Rock, Arkansas.

**RESPONSE:** Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 and consequently denies such allegations.

2. Armstrong Teasdale, LLP is a Limited Liability Partnership in good standing with the State of Missouri with its principal place of business located in St. Louis, Missouri. Armstrong Teasdale is a law firm employing many attorneys, paralegals, and other support staff providing legal services to businesses and individuals both within the St. Louis community, nationally and internationally.

**RESPONSE:** Armstrong admits the allegations of paragraph 2.

1492693.01\003445.48199

3. This Court has jurisdiction over the claims asserted herein under 28 U.S.C. §1332 as the parties to this cause of action are citizens of different states and the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

RESPONSE: Armstrong denies that plaintiff has any lawful basis for asserting any claim against it, but does not dispute the jurisdiction of this Court.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1) because the Defendant maintains its principal office in this District and the alleged wrongdoing occurred within this District.

RESPONSE: Armstrong denies that plaintiff has any lawful basis for asserting any claim against it, but does not dispute venue in this Court.

5. Before 2000, Plaintiff had invented a new computer firewall technology that was designed to provide greater security and privacy to guard the integrity of computers and computer networks than was then currently existing. It was based upon heuristic or interactive concepts creating a behavior based security system rather than a rules based system which existed. This Heuristic Firewall more efficiently detects attacks on computer networks within real time to reduce losses from external attacks by foiling a broader range of attacks, extends the abilities of firewalls and increases performance of computer networks.

RESPONSE: Armstrong denies the allegations of paragraph 5, except that it admits that as of February 2000 plaintiff had conceived of an idea for a computer firewall device ("Firewall"). Upon information and belief, Armstrong states that plaintiff had not fixed this concept into a tangible medium of expression or otherwise developed this device or put it into practice. Armstrong admits that the United States Patent Office eventually granted Patent No. 6519703 for the Firewall.

6. In February, 2000, Plaintiff and his then wife formed a limited liability corporation, TechGuard Security, LLC (hereinafter, TechGuard), for the purpose of economically exploiting Plaintiff's technology and providing other computer information and technology services to individuals, businesses and governmental agencies.

**RESPONSE**: Armstrong admits that plaintiff together with Suzanne Magee Joyce, employing counsel with a law firm other than Armstrong, filed Articles of Organization for a limited liability company, called TechGuard Security, LLC in February 2000, with the intent that it would market and benefit from marketing the Firewall and other computer information and technology services. Armstrong otherwise denies the allegations of paragraph 6.

7. Defendant Armstrong Teasdale created many of the initial documents that established the corporation and the method by which it would operate. From February, 2000 until the present, Defendant Armstrong Teasdale has provided legal services through its attorneys for TechGuard, including services associated with the economic exploitation of the technology Plaintiff developed.

**RESPONSE**: Armstrong denies the allegations of paragraph 7, except that it admits that it entered into a formal engagement to represent TechGuard on or about March 22, 2000 and admits that through the time of the filing of this lawsuit, it has continued to represent TechGuard. Armstrong denies that it created the initial documents that formed TechGuard as such services were performed by another lawyer and another law firm unrelated to Armstrong.

8. Shortly after the formation of TechGuard, the initial units of ownership were subscribed as follows: Plaintiff's then wife (4.9 million units), Plaintiff (3.9 million units), Andrea Johnson (1 million units) and Jeffery Johnson (300,000 units). The ownership was apportioned so that TechGuard could become certified as a majority woman-owned business

3

enterprise and as a small, disadvantaged business under the Small Business Administration business development program. As a minority owned business, TechGuard hoped to obtain government related contracts for better economic exploitation of Plaintiff's invention and for its other services offered customers.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 and consequently denies such allegations, except that it admits that plaintiff and Suzanne Magee Joyce, among other things, wanted to apportion ownership in TechGuard in such a way as to make it a majority women-owned business and thereby increase the chances of obtaining government-related contracts.

9.   TechGuard's certification by the Small Business Administration Bureau was initially rejected. Thereafter, Plaintiff transferred 700,000 units of his ownership to Andrea Johnson who also received the ownership interests of her husband, Jeffrey. TechGuard then received the necessary Small Business Administration certification and qualified for government contracts as a minority owned business.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 and consequently denies such allegations, except that it admits that plaintiff and Suzanne Magee Joyce, among other things, wanted to apportion ownership in TechGuard in such a way as to make it a majority women-owned business and thereby increase the chances of obtaining government-related contracts.

10.   From the inception of TechGuard until his termination with that company, Plaintiff was the Co-Chief Executive Officer and Chief Technology Officer of the company.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10 and consequently denies such allegations.

11.     When TechGuard was formed, Plaintiff entered into a contract with the company whereby all technology that he helped to develop while employed by the company would be owned by TechGuard, except for the Heuristic Firewall technology, which he had begun before the company was formed as referenced above.  See a copy of that contract attached hereto and incorporated herein as Exhibit A.

**RESPONSE**:     Armstrong denies the allegations of paragraph 11, except that it admits that Exhibit A is a true and correct copy of a "Confidentiality and Invention Rights Agreement" dated February 22, 2000.

12.     Shortly after TechGuard was formed, Defendant Armstrong Teasdale represented Plaintiff, individually, in applying for a patent on the Heuristic Firewall technology.  From before the filing for the application for the patent for the Methods and Apparatus for Heuristic Firewall, through the filing of that patent on April 14, 2000 and through the granting of that patent in February, 2003, members of Defendant Armstrong Teasdale continued to represent Plaintiff, individually, in securing that patent issued by the United States Patent Office.

**RESPONSE**:     Armstrong denies the allegations of paragraph 12, except that it admits that based on plaintiff's stated desire and agreement to grant TechGuard an exclusive, royalty-free license to the Firewall, plaintiff granted Armstrong and certain of its attorneys a power of attorney to file for patent protection for the Firewall; that Armstrong filed for patent protection on or about April 14, 2000; and that a patent was granted in and around February 2003.  Armstrong's client throughout this process was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard and paid for by it, not plaintiff.

13.     For example, Alan Cassel, then a member of Defendant Armstrong Teasdale, filed the initial patent application for Plaintiff on April 14, 2000.  That initial application included

5

specifications; claims and an abstract; a declaration and power of attorney; drawings; patent application transmittal; transmittal of the fee; a statement claiming small entity status; and proper certificates of mailing.

**RESPONSE**:    Armstrong denies the allegations of paragraph 13, except that it admits that based on plaintiff's stated desire and agreement to grant TechGuard an exclusive, royalty-free license to the Firewall, plaintiff granted Armstrong and certain of its attorneys a power of attorney to file for patent protection for the Firewall; that Armstrong filed for patent protection on or about April 14, 2000; and that a patent was granted in and around February 2003. Armstrong's client throughout this process was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard and paid for by it, not plaintiff.

14.    In the declaration and power of attorney, Plaintiff was listed as the sole or first inventor and appointed John Beulick, Patrick Rasche, Michael Tersillo, Donald Holland, Tara Nealey, Bruce Atkins, Alan Cassel, Elizabeth O'Dell, Stephen Cooper, Robert Slenker, Robert Reeser, III, and Natu Patel, all of Defendant Armstrong Teasdale, as his attorneys and/or agents with the authority to prosecute his patent application.

**RESPONSE**:    Armstrong denies the allegations of paragraph 14, except that it admits that based on plaintiff's stated desire and agreement to grant TechGuard an exclusive, royalty-free license to the Firewall, plaintiff granted Armstrong and certain of its attorneys a power of attorney to file for patent protection for the Firewall; that Armstrong filed for patent protection on or about April 14, 2000; and that a patent was granted in and around February 2003. Armstrong's client throughout this process was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard and paid for by it, not plaintiff.

15. In April, 2000, Plaintiff was the sole owner of that Heuristic Firewall technology. TechGuard had no rights in that technology. TechGuard did not even have rights to any continued development of that technology even if Plaintiff enhanced that technology while employed by TechGuard.

**RESPONSE**: Armstrong denies the allegations of paragraph 15. Further answering, Armstrong states that by virtue of a Transfer Agreement dated February 22, 2000, plaintiff agreed that he would grant TechGuard "an exclusive, royalty-free license" of indefinite duration to the Firewall and that at all times plaintiff understood and agreed that all commercial and economic rights regarding the Firewall were to inure to the benefit of TechGuard.

16. During Defendant Armstrong Teasdale's representation of Plaintiff throughout the patent application process, Defendant Armstrong Teasdale filed many documents on behalf of Plaintiff including, but not limited to, a petition to make special under the anti-terrorism program, an international search report, a petition for an accelerated declaration, amendments to various initial documents filed with the original patent application, responses to initial rejections of the patent application by the primary examiner, and other and necessary filings and submissions so that Plaintiff could receive the patent on the Heuristic Firewall.

**RESPONSE**: Armstrong denies the allegations of paragraph 12, except that it admits that based on plaintiff's stated desire and agreement to grant TechGuard an exclusive, royalty-free license to the Firewall, plaintiff granted Armstrong and certain of its attorneys a power of attorney to file for patent protection for the Firewall; that Armstrong filed for patent protection on or about April 14, 2000; and that a patent was granted in and around February 2003. Armstrong's client throughout this process was TechGuard, not plaintiff.

17. Plaintiff received the patent for the methods and apparatus for Heuristic Firewall on February 11, 2003 by the United States Patent Office, Patent No. 6519703.

**RESPONSE**: Armstrong admits the allegations of paragraph 17.

18. Before January 1, 2001, while representing both TechGuard and Plaintiff, Defendant Armstrong Teasdale prepared an agreement for Plaintiff to license his Heuristic Firewall technology to TechGuard for no fee. A Defendant Armstrong Teasdale attorney advised Plaintiff to sign that agreement and told Plaintiff that it was not necessary for him to have separate legal counsel. The Defendant Armstrong Teasdale attorney also told Plaintiff that since Plaintiff and his then wife were majority shareholders, that his interests in the Heuristic Firewall were sufficiently protected. Defendant Armstrong Teasdale did not advise Plaintiff to seek other counsel or even to consult with other counsel before signing the referenced agreement.

**RESPONSE**: Armstrong denies the allegations of paragraph 18, except that it admits that at the direction of its client, TechGuard, through plaintiff and his wife, it drafted and plaintiff signed a "Patent License Agreement," a true and correct copy of which is attached to the Complaint as Exhibit B. This Patent License Agreement effectuated the Transfer Agreement dated February 22, 2000, under which plaintiff had agreed that he would grant TechGuard "an exclusive, royalty-free license" of indefinite duration to the Firewall. Further answering, Armstrong states that at all times plaintiff understood and agreed that its client was TechGuard, not plaintiff, and that all commercial and economic rights regarding the Firewall were to inure to the benefit of TechGuard.

19. Following that advice, Plaintiff signed that agreement, a copy of which is attached hereto and incorporated herein by reference as Exhibit B.

**RESPONSE**:   Armstrong denies the allegations of paragraph 19, except that it admits that plaintiff signed a "Patent License Agreement," a true and correct copy of which is attached to the Complaint as Exhibit B.

20.   Defendant Armstrong Teasdale, as attorney for Plaintiff, owed Plaintiff the duty of utmost loyalty, a fiduciary duty, to protect Plaintiff's interests and to help him receive a good, reasonable and fair fee for licensing the Heuristic Firewall technology and to protect his interest therein against any possible future happening in TechGuard's development and/or in his personal life.

**RESPONSE**:   Armstrong denies that it acted as attorney for plaintiff; denies that it breached any duty owed plaintiff; and otherwise denies the allegations of paragraph 20.

21.   TechGuard received a grant from the National Institute of Standards and Technology (hereinafter, NIST) for the further development of the Heuristic Firewall technology that Plaintiff created and patented.  Plaintiff was the principal investigator and developer of the further research under that NIST grant.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 and consequently denies such allegations.

22.   The further development of the Heuristic Firewall technology made pursuant to that NIST grant has led to an expansion of the capabilities of the Heuristic Firewall technology which Plaintiff patented.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22 and consequently denies such allegations.

23.   Plaintiff applied for a second patent on the expansion and development of the Heuristic Firewall, termed the H.I.P.P.I.E. technology.  That second generation technology or

advancement of the first Heuristic Firewall technology is premised upon and incorporates the technology from Plaintiff's first patent.

**RESPONSE**:   Armstrong denies the allegations of paragraph 23.

24.   In February, 2006, Defendant Armstrong Teasdale represented Plaintiff by filing a provisional application for a patent of a H.I.P.P.I.E. technology premised on Plaintiff's patented technology. Thereafter, Defendant Armstrong Teasdale filed for a patent of the H.I.P.P.I.E. technology on behalf of TechGuard and/or its employees, excluding Plaintiff from that patent application and in conflict with Plaintiff's interests and in violation of Defendant Armstrong Teasdale's fiduciary duties of utmost loyalty to Plaintiff as his attorney.

**RESPONSE**:   Armstrong denies the allegations of paragraph 24. Further answering, Armstrong states that its client was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard, not plaintiff.

25.   Defendant Armstrong Teasdale breached its fiduciary duty of utmost loyalty to Plaintiff in one or more of the following respects:

  a. It acted in conflict with Plaintiff's interests and created the January 1, 2001 agreement that benefited its other client, TechGuard, to the extreme detriment of and damage to Plaintiff;

  b. It advised Plaintiff to sign the January 1, 2001 agreement;

  c. It failed to advise Plaintiff that he should secure separate counsel to advise him as to whether he should sign the January 1, 2001 agreement or negotiate different and more favorable terms for that agreement;

    d.      It acted in conflict with Plaintiffs interests by excluding him from the application for a patent on the H.I.P.P.I.E. technology and working to secure that patent application on behalf of others; and

    e.      It failed to obtain Plaintiff's waiver of its conflict of interest in representing both Plaintiff and TechGuard before January, 2001, and before acting to exclude Plaintiff from the patent application it filed on behalf of others on the H.I.P.P.I.E. technology.

**RESPONSE**:   Armstrong denies the allegations of paragraph 25, including each subparagraph thereof.   Further answering, Armstrong states that its client was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard, not plaintiff.

26.   Plaintiff never waived any conflict of interest that Defendant Armstrong Teasdale had in representing both TechGuard or others and Plaintiff.

**RESPONSE**:   Armstrong denies having any conflict of interest as alleged and otherwise denies the allegations of paragraph 26.   Further answering, Armstrong states that its client was TechGuard, not plaintiff, and all work performed was on behalf of TechGuard, not plaintiff.

27.   TechGuard did not make the first sale of Plaintiff's patented technology, the Heuristic Firewall, until sometime in 2005.   To Plaintiff's knowledge, there have been no sales of the patented technology other than those made by TechGuard.   Plaintiff was not damaged by Defendant Armstrong Teasdale's breach of fiduciary duty until those first sales occurred.

**RESPONSE**:   Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 27 and consequently denies such allegations.

28.   As a direct and proximate result of Defendant Armstrong Teasdale's breaches of its fiduciary duty to Plaintiff, Plaintiff has not and will not receive licensing fees that he should

have received and should in the future receive from the sales of the patented technology or any other technology that substantially incorporates the patented technology and Plaintiff may not receive income from the H.I.P.P.I.E. technology.

**RESPONSE:**  Armstrong denies breaching any duty owed to plaintiff and otherwise denies the allegations of paragraph 28.

29.  In 2006, Plaintiff left the employ of TechGuard. In 2007, Plaintiff was divorced from Suzanne Magee  In the divorce decree, Ms. Magee was awarded fifty percent (50%) of the Heuristic Firewall patent.  In spite of that, Plaintiff has lost and will continue to lose considerable income from not having a proper and fair licensing agreement for the patented Heuristic Firewall technology which he would have had but for the breach of fiduciary duty of Defendant Armstrong Teasdale.  Plaintiff's damages as a result of that breach are ongoing and will continue into the future.  They exceed the jurisdictional threshold for this Court for diversity jurisdiction of this cause of action.  Plaintiff has also been caused to lose fees he should receive from the H.I.P.P.I.E. technology as a direct result of Defendant Armstrong Teasdale's breach of its fiduciary duty.  Those losses also are ongoing and will continue into the future.

**RESPONSE:**  Armstrong denies the allegations of paragraph 29, except that it admits that plaintiff was divorced from Suzanne Magee Joyce in 2007 and that Suzan Magee Joyce was awarded her marital share of 50% of the Firewall patent.

30.  In 2003 TechGuard had the Heuristic Firewall technology valued by a company specializing in valuations of technology, which determined that the licensing royalty value of Plaintiff's patented technology was in the high hundreds of millions dollars and the enterprise value exceeded several billion dollars.

**RESPONSE**: Armstrong lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 30 and consequently denies such allegations.

### Count II

31. Plaintiff incorporates herein all allegations made heretofore.

**RESPONSE**: Armstrong repeats and incorporates by reference its response to paragraphs 1 through 30 hereof as and for its response to paragraph 31.

32. Although Plaintiff believes that his cause of action for Defendant Armstrong Teasdale's acting in conflict with his interests as its client is for breaches of its fiduciary duty to Plaintiff, out of an abundance of caution Plaintiff also asserts a claim herein that Defendant Armstrong Teasdale acted below the standard of care.

**RESPONSE**: Armstrong is not required to respond to this allegation regarding plaintiff's motivation in pursuing this second Count for relief. To the extent any response is or may be required, Armstrong denies the allegations of paragraph 32.

33. By acting in conflict with the interests of Plaintiff, its client, as set forth above Defendant Armstrong Teasdale failed to act with the requisite skill and learning ordinarily exercised by members of the legal profession under the same or similar circumstances and was thereby negligent.

**RESPONSE**: Armstrong denies the allegations of paragraph 33.

34. As a direct and proximate result of Defendant Armstrong Teasdale's negligence, Plaintiff has been damaged as set forth above.

**RESPONSE**: Armstrong denies the allegations of paragraph 34.

## FURTHER ANSWER AND DEFENSE

As and for further answer and defense, Armstrong states:

1. Armstrong denies any allegation of plaintiff's Complaint which is not specifically admitted herein.

2. Armstrong never acted as attorney for plaintiff. The referenced power of attorney and any other actions taken regarding the Firewall patent were taken on behalf of Armstrong's client, TechGuard, and as part of the routine patent practice wherein a party to whom a patent is assigned or licensed, employs its attorneys to prosecute the patent. Because patent law requires that the patent be prosecuted in the name of the inventor, it is routine patent practice for counsel for the assignee or licensee to obtain a power of attorney from the inventor and such power of attorney does not create any attorney-client relationship. Plaintiff never engaged Armstrong to be his attorney, never paid Armstrong for any services as his attorney, and at all times understood that Armstrong was representing TechGuard, not plaintiff.

3. To the extent Armstrong may be deemed to have acted as attorney for plaintiff and to the extent any conflict of interest existed (all of which Armstrong denies), plaintiff was fully cognizant of all pertinent issues and consented to and waived any such conflicting representation.

4. To the extent Armstrong may be deemed to have acted as attorney for plaintiff and to the extent any conflict of interest existed (all of which Armstrong denies), plaintiff was fully cognizant of all pertinent issues and represented such. Armstrong relied upon plaintiff's express and implied representations to this effect. Consequently, plaintiff is estopped from any action based on the acts and omissions alleged.

5. Plaintiff released Armstrong from and of any liability asserted herein as a result of an agreement entered into as part of his divorce from Susan Magee Joyce.

6. Plaintiff's claim is barred as a consequence of plaintiff's contributory negligence.

7. Alternatively, to paragraph 6 above, plaintiff's damages must be reduced by such amount as relates his proportionate share of fault.

8. Plaintiff's claim is barred by the applicable statute of limitations.

9. Armstrong reserves the right to assert any additional affirmative defenses that may be revealed during the course of discovery.

WHEREFORE, having fully answered plaintiff's Complaint, defendant Armstrong Teasdale prays that the same be dismissed at plaintiff's costs.

        LEWIS, RICE & FINGERSH, L.C.

        By: /s/ Joseph E. Martineau
        Andrew Rothschild, #4214
        Joseph E. Martineau, #3759
        500 North Broadway, Suite 2000
        St. Louis, Missouri 63102
        Telephone: 314/444-7729
        Facsimile: 314/612-7729

        Attorneys for Defendant Armstrong Teasdale, LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the Answer of Defendant Armstrong Teasdale, LLP, was served via the Court's electronic filing system, this 10th day of November, 2008, on:

> Laurence D. Mass
> 230 South Bemiston Avenue
> Suite 1200
> St. Louis, Missouri 63105

/s/ Joseph E. Martineau