UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES JOYCE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 4:08-CV-1390 (CEJ) |
| ARMSTRONG TEASDALE, LLP, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on the defendant's motion for summary judgment based upon a lack of actual damages. Plaintiff opposes the motion and the issues have been fully briefed.

Plaintiff has also filed a motion requesting leave to repair the exclusion of Stephen P. Weeks' expert evidence through the admission of a supplemental report. Plaintiff's request is in response to this Court's August 15, 2012 order granting defendant's motion to exclude Weeks' expert testimony. The Court will grant plaintiff's motion for leave to repair, and the supplemental report attached to the motion as "Exhibit A" will be treated as filed. The Court has considered the supplemental report in determining the motion for summary judgment.

I. Background

At issue in this case is whether defendant negligently advised plaintiff in executing a licensing agreement, resulting in a diminution of his rights to U.S. Patent No. 6,519,703 ("'703"). Defendant provided representation to plaintiff and his wife Suzanne Magee in forming a company called TechGuard Security, LLC in 2000. Defendant also represented plaintiff in his application for the '703 patent. After filing the '703 application, plaintiff provided TechGuard with an exclusive royalty-free license

for the lifetime of the '703 patent. This licensing agreement was also drafted by defendant.

Plaintiff's employment with TechGuard terminated in 2006. In 2007, plaintiff and Magee divorced. As part of the divorce settlement, plaintiff relinquished the majority of his ownership in TechGuard and 50% of his ownership in the '703 patent.

Plaintiff claims that because he executed a power of attorney to defendant, as required for the prosecution of the '703 patent, defendant owed him an independent duty of competent representation. He claims that this duty was breached by the conflict of interest created by defendant's joint representation of plaintiff and TechGuard in licensing the '703 patent. Plaintiff argues that, had this conflict not existed, the license to TechGuard would have included minimum royalty or anti-shelving provisions that would have preserved plaintiff's interest in the '703 patent in the event his employment with TechGuard was terminated.

Defendant asserts that it is entitled to judgment as a matter of law because plaintiff cannot produce evidence establishing actual damages. According to defendant, plaintiff's proof of actual damages rests exclusively upon Weeks' expert testimony. Defendant argues that this testimony fails to show that plaintiff sustained ascertainable damages based upon the value of the '703 patent. Plaintiff admits that he has relied heavily on Weeks' testimony to prove the amount of his damages. However, plaintiff points to his own testimony and that of Magee as additional evidence supporting his claim for damages. When asked in a deposition whether she believed the '703 patent had value, Magee testified "I have not had the value of the patent assessed, so, I would say there is some value, but I don't know what that value might be." (Doc. #92-1). Plaintiff has not stated what his own testimony would be.

II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.   Discussion

The elements of a claim of legal malpractice under Missouri law are: (1) an attorney-client relationship between itself and the defendant; (2) negligence or breach of contract by the defendant; (3) proximate causation; and (4) damages. Patterson v. Warten, Fisher, Lee & Brown, LLC, 260 S.W.3d 417, 419 (Mo. App. 2008). To prove damages and causation, plaintiff must show that, "but for the attorney's negligence, the result of the underlying proceeding would have been different." Roberts v. Sokol, 330

S.W.3d 576, 580 (Mo. Ct. App. 2011). "The measure of damage would be the amount a client would have received 'but for' the attorney's negligence." Id. (internal quotation omitted). "Damages need not be established with absolute certainty." Id. But "reasonable certainty is still required as to both existence and amount and the evidence must not leave the matter to speculation." Id. at 580-81.

In the instant case, the Court finds that neither plaintiff's nor Magee's testimony forms a basis for establishing damages. The deposition testimony of Magee may be sufficient to show the *existence* of damages. However, given that Magee specifically stated that she did not know the value of the '703 patent, her testimony is not sufficient to show the *amount* of damages. See id. (existence and amount of damages must be proved). Additionally, while an owner of property may be able to testify regarding the value of that property, such testimony must be admissible and based upon the owner's own knowledge and experience. Fed. R. Civ. P. 701. Plaintiff here has not pointed to any knowledge or experience that could serve as a basis for his testimony regarding the value of the '703 patent. The '703 patent has not been commercially developed, licensed, or sold. See US Salt, Inc. v. Broken Arrow, Inc., 563 F.3d 687, 690 (8th Cir. 2009) (business owner who could not show written commitments from any customer, recent experience within the relevant market, objective market research, a cost analysis, or a business plan, could not give lay testimony about value of business). Nor can plaintiff simply restate the testimony of his expert or others regarding the patent's value. Id.

Lastly, even with the inclusion of Weeks' supplemental report, the expert testimony continues to be too reliant upon unsupported speculation to assist a trier of fact in determining what damages, if any, are attributable to defendant's alleged negligence. Guided by Federal Rule of Evidence 702 and the Supreme Court's decision

in Daubert, this Court found three substantial deficiencies in Weeks' 2009 patent valuation report: (1) The segment utilization and segment penetration rates estimated by Weeks were based on generalizations without any sort of qualitative analysis; (2) Weeks failed to link certain licenses to the patent at issue in order to use a royalty rate that was derived from an average group of comparative licenses; and (3) the report failed to include an analysis as to what proportion of the royalty base value might be specifically attributable to the '703 technology. Joyce v. Armstrong Teasdale, LLP, 2010 U.S. Dist. LEXIS 92821 (E.D. Mo., Sept. 7, 2010); see also Fed. R. Evid. 702; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).

In addressing segment utilization rates and segment penetration rates, the supplemental report includes information reflecting that "five leading players" and "others" in the data security market "all offer lines of products claiming heuristic techniques." (Doc. #101-1 at 2). The report asserts that this increased use of heuristics in computer security along with the fact that "no fewer than 132 subsequently issued US patents cite the '703 patent" sufficiently supports a 10% estimate for both rates. (Doc. #101-1 at 3). Although this information may be less of a generalization than the information in Weeks' 2009 report (referencing potential competing technologies and work on similar technologies being done by other firms in the industry), the supplemental report fails to include any sort of qualitative analysis. See Joyce, 2010 U.S. Dist. LEXIS 92821 ("Without any sort of qualitative analysis to demonstrate how these rates are reasonable in comparison to other related technologies, the basis for Weeks' testimony fails to rely on methodology that can be tested, rules out alternate possibilities, [and] has an ascertainable rate of error[.]"). The supplemental report would not enable the trier of fact to conclude that these rates are more than mere speculation. As defendant correctly points out, plaintiff does not identify what products

and what percentage of the products use heuristics, what revenues flow from such products, and how the 132 citations correlate to an estimate that the patent would penetrate 10% of the market. "All expert testimony on damages must tie the assumptions used in arriving at the damages figure with sound economic data relevant to the claimed invention." Uniloc USA, Inc. v. Microsoft Corp., 2011 WL 9738, *19-22 (Fed, Cir, 2011).

The supplemental report also fails to appropriately address the deficiencies in the 10% royalty rate estimation. Weeks asserts that 10% is "the average royalty rate for software patents once a product based on the patent is in production," and he "would expect that royalty rates for Data Security technology would be higher than the average software royalty rates, due to their high value in protecting the licensee's customers from losses due to computer threats." Weeks further maintains that he has "additionally reviewed a number of documents," including a report utilized in the case of Finjan, Inc. v. Secure Computing Corporation, in which the court accepted 8% and 16% royalty rates for hardware and software products respectively. (Doc. #101-1 at 4); see also 626 F.3d 1197 (Fed. Cir. 2010). Notwithstanding Weeks' reference to the Finjan report, the Court can only assume that the 10% royalty rate estimate is substantially grounded upon the same published sources that this Court previously determined were insufficient. The Court reiterates that "in using a royalty rate that is derived from the average of a group of comparable licenses, a valuation expert must link certain licenses to the patent at issue." See Joyce, 2010 U.S. Dist. LEXIS 9282; Dataquill Limited v. High Tech Computer Corp., 2012 U.S. LEXIS 53164 (S.D. Cal. 2012) ("Plaintiff must establish comparability of the licenses before integrating their royalty rates[.]").

The supplemental report concludes by addressing Weeks' use of the "entire market value" in calculating the royalty base.  Weeks asserts that the "[i]ntegration of

-6-

products does not necessarily dilute the market accessible to technology based on the '703 patent, because all constituent parts of an integrated Data Security product could benefit from the '703 heuristic method." However, the report fails to show that the "patented feature creates the basis for customer demand or substantially creates the value of the component parts." See Joyce, 2010 U.S. Dist. LEXIS 9282 (quoting Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1318 (Fed. Cir. 2011).

\* \* \* \*

For the reasons discussed above, the Court finds that the evidence plaintiff has produced fails to establish a genuine issue of material fact as whether damages are reasonably ascertainable—an essential element of plaintiff's claim. The defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to repair the exclusion of Steve Weeks' expert evidence [Doc. #101] is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment based upon lack of damages [Doc. #76] is **granted**.

**IT IS FURTHER ORDERED** that all other pending motions are denied as moot.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 26th day of September, 2012.